UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN SANTAMARIA,

        Plaintiff,

v.                                Case No. 3:21-cv-603-BJD-MCR

MYRON MCDOWELL and ZENITH
FREIGHT LINES, LLC,

        Defendants.

_____/

## **ORDER**

**THIS CAUSE** is before the Court on Defendants' Time Sensitive

Motions to Compel Compulsory Medical Examination of John Santamaria

("Motions") (Docs. 24 & 27),[1] Plaintiff's Combined Response in Opposition to

Defendants' Two Motions to Compel ("Response") (Doc. 33), and Defendants'

Reply to Plaintiff's Combined Response ("Reply") (Doc. 36), filed pursuant to

the Court's April 14, 2022 Endorsed Order (Doc. 34).  For the reasons that

follow, the Motions are due to be **GRANTED as stated herein.**

---

[1] Defendants' memoranda in support of the Motions were filed separately
from the Motions.  (*See* Docs. 25 & 28.)  Defendants are cautioned to comply with all
applicable rules in the future, including Local Rule 3.01(a), which states, in relevant
part, that "[a] motion must include — *in a single document* no longer than twenty-
five pages inclusive of all parts — a concise statement of the precise relief requested,
a statement of the basis for the request, and a legal memorandum supporting the
request."  M.D. Fla. R. 3.01(a) (emphasis added).

## I.   Background

As succinctly described by Plaintiff:

> This case concerns a February 3, 2020 motor vehicle collision in which the Defendant's Freightliner tractor-trailer suddenly veered into the middle lane of Interstate 95 and smashed into the car operated by Plaintiff, a pediatric hospice and palliative medicine physician.  The crash, which was recorded by the cameras on Plaintiff's Tesla Model 3, lasted between 15 to 20 seconds during which time the tractor-trailer pushed Plaintiff's car sideways approximately 800 feet down I-95.  Plaintiff is claiming permanent injuries caused by the crash to the following body parts: (i) neck, (ii) back, (iii) right wrist, (iv) left shoulder, (v) lower extremities, and (vi) his brain.

(Doc. 33 at 2.)

In the Motion, filed on April 6, 2022, Defendants request an order compelling a compulsory medical examination of Plaintiff, via Zoom or a similar platform, by David Cifu, M.D., a licensed physiatrist and brain injury expert, at a date and time set by the Court or agreed to by the parties and in accordance with the particulars set forth by the Court, which should mirror the order entered in *Kropf v. Celebrity Cruises, Inc.*, No. 14-CV-21599, 2014 WL 6682533, *4 (S.D. Fla. Nov. 25, 2014).  (Docs. 24, 25.)  Specifically:

> The scope of the medical examination shall be limited to investigating the cause, nature, and extent of Plaintiff's injuries allegedly caused by the [a]ccident.  Dr. Cifu will assess Santamaria's subjective complaints and objective status; medical, surgical, and family history; and the history of Santamaria's relevant accidents and injuries.  The examination will last as long as is necessary for Dr. Cifu to reasonably assess Santamaria's physical condition and to provide an expert medical opinion.  Neither party shall videotape the examination.

Moreover, neither party's counsel nor other third parties shall be permitted to attend the examination.

(Doc. 25 at 7.)  Defendants argue that there is good cause for a neurological medical examination by Dr. Cifu because Plaintiff has placed his physical condition in controversy by alleging that Defendants' tortious conduct caused injuries to his neck, back, right wrist, left shoulder, lower extremities, and brain.  (Docs. 24, 25.)  According to Defendants, some or all of Plaintiff's alleged injuries may have been caused by a degenerative disease or preexisting condition.  (Doc. 25 at 3.)  Defendants point out that Plaintiff has identified experts of his own to include neurologists, orthopedists, and neuropsychologists.  (*Id.* at 2.)

In the Motion, filed on April 8, 2022, Defendants request an order compelling a compulsory medical examination of Plaintiff by Michael Herkov, M.D., a board-certified neuropsychologist, as follows:

The examination will occur in person at U.S. Legal Support located at 4200 W Cypress Street #750, Tampa, FL 33607. Defendants have offered April 18, 2022 at 2:30 P.M. or April 28, 2022 at 10:00 A.M. as dates of availability to Plaintiff for the examination to occur.

The scope of the examination shall be limited to investigating the cause, nature, and extent of Plaintiff's injuries allegedly caused by the subject accident.  Dr. Herkov will conduct an in[-]person interview, administer selected neuropsychological tests, assess Santamaria's subjective complaints and objective status; medical, surgical, and family history; and the history of Santamaria's relevant accidents, injuries, and neuropsychological condition.

3

> The examination will last no longer than four (4) hours for
> Dr. Herkov to reasonably assess Santamaria's neuropsychological
> condition and to provide an expert medical opinion.

(Doc. 27 at 2-3 (numbering of paragraphs omitted); Doc. 28 at 7 (adding that

"[n]either party's counsel nor other third parties shall be permitted to attend

the examination").)  Defendants argue that there is good cause for a

compulsory medical examination by Dr. Herkov because Plaintiff has placed

his mental/neuropsychological condition in controversy by alleging that

Defendants' tortious conduct caused injuries to his neck, back, right wrist,

left shoulder, lower extremities, and brain.  (Docs. 27, 28.)  According to

Defendants, some or all of Plaintiff's alleged injuries may have been caused

by a degenerative disease or preexisting condition.  (Doc. 28 at 1, 3.)

Defendants contend that because Plaintiff's Disclosure of Expert Witnesses

includes Dr. Sarah Lahey, Ph.D. (a neuropsychologist) as a treating

physician, Defendants are entitled to have their neuropsychologist, Dr.

Herkov, conduct a psychological examination of Plaintiff.  (Docs. 27, 28.)

Plaintiff responds that the Court should enter "an order limiting

Defendants to one examination concerning Plaintiff's brain injury and,

further, establishing conditions concerning the scope of any examination of

Plaintiff's brain to protect Plaintiff from annoyance, embarrassment,

oppression, or undue burden arising out of the inherently invasive and

sensitive examination."  (Doc. 33 at 1-2.)  Plaintiff explains:

Plaintiff does not dispute that his mental deficits caused by the crash are "in controversy," nor that Defendants have "good cause" for a single physical or mental examination concerning Plaintiff's brain injury/cognitive impairment caused by the crash. However, Defendants should not be permitted to retain two specialists to essentially evaluate in tandem the same issue – Plaintiff's brain injury.  Permitting the Defendants to examine the Plaintiff with two physicians of its own choosing from different specialties concerning essentially the same injury would not "level the playing field," which is the purpose underlying Rule 35.  Rather, it would have the opposite result in an unfair tactical advantage to the Defendants, in addition to being needlessly duplicative, cumulative, and invasive.

While Defendants assert good cause for each [compulsory medical examination] independently vis-à-vis two motions to compel, Defendants have presented no argument that good cause exists for two brain injury specialists to examine the same issue in the case.  Nor do Defendants' *Motions* elucidate how each examination is materially different, not cumulative, or would somehow prejudice Defendants' case if they were only allowed one [compulsory medical examination] of Plaintiff's brain/brain injuries.  Defendants have simply not established any cause, let alone good cause, to establish entitlement to two [compulsory medical examinations] concerning the same condition when the plain language of Rule 35 entitles Defendants to one.  . . .

Moreover, Defendants have not provided any details, beyond mere boilerplate, concerning the scope of either [compulsory medical examination] which leaves open the inference that the purpose of the examinations is the same (*i.e.*, to rebut in tandem Plaintiff's claim that his traumatic brain injury was causally related to the crash).

(*Id.* at 3-4 (numbering of paragraphs omitted) (emphasis in original).)

Plaintiff adds that Defendants will not be prejudiced by only one examination

of Plaintiff's brain condition and that Defendants already possess all medical

records from Plaintiff's treating physicians.  (*Id.* at 9-10.)  Plaintiff states:

> Dr. Cifu and Dr. Herkov both appear to specialize in brain injuries and Defendants have made no showing that they intend to investigate separate injuries or conditions.  Nor have Defendants asserted that either doctor requires the assistance of other consultants before rendering a diagnosis, that the first examination would not be adequate or complete, or that there exists a substantial lag time.

(*Id.* at 10.)

Assuming the Court permits Defendants to proceed with the examinations, Plaintiff proposes a number of "conditions which are intended to balance Plaintiff's privacy interests with appropriate deference to the expertise of the examiner," including:

(a)     Providing "a description of the potential tests that will comprise the universe of tests that the examining physicians intend to conduct" and precluding any invasive testing without Plaintiff's informed consent or a Court order;

(b)     Limiting the examiner "to eliciting information reasonably necessary to conduct the specialty-appropriate examination and evaluation of the Plaintiff, including a medical history as well as present complaints";

(c)     Directing Plaintiff to furnish only his name, address, and date of birth upon arrival at the examiner's office and directing that any additional paperwork be delivered to his counsel's office no later than 72 hours prior to the examination;

(d)      Requiring Plaintiff to bring only a valid form of identification to the examination and requiring defense counsel to provide the examiner with all medical records, imaging studies, test results, etc.;

(e)      Limiting the examination to four (4) hours;

(f)      Allowing Plaintiff's counsel to send a court reporter or a videographer to the examination after notifying defense counsel of their identity at least five (5) days prior to the examination.[2]  (*Id.* at 6-8.)

In their Reply, Defendants state that Rule 35 does not limit the requesting party to one examination.  (Doc. 36 at 2.)  According to Defendants, Plaintiff disregards that the physical manifestations of "brain injury" are different from the neuropsychological symptoms of "cognitive impairment," and, therefore, require separate examinations.  (*Id.*)  Defendants further point out that:

> Plaintiff has not challenged the qualifications of Dr. David Cifu and Dr. Michael Herkov in his [R]esponse, and acknowledges that the two physicians are doctors "from different specialties." Physiatry and Neuropsychology are two distinct medical fields with differences in training and expertise.  Neuropsychological testing seeks to assess cognitive function, and neuropsychologists administer[] a unique battery of tests to make that assessment. A Physiatrist's testing seeks to determine physical diagnoses of a patient and evaluate injury, and administer their own battery of tests to do so.  . . .  Further, neither of these batteries of tests,

---

[2] Plaintiff's proposed conditions are based in substantial part on the conditions adopted in *Conner v. Marriott Hotel Servs., Inc.*, No. 2:20-cv-840-SPC-NPM, 2021 WL 4804440, *3 (M.D. Fla. Oct. 14, 2021).

and more specifically neither of these examiners listed by Defendants, require any invasive examination of the Plaintiff. . . . To provide Plaintiff with neuropsychological testing tasks or other related information would result in either familiarity with the testing and exposure to testing items that materially affect the examination results, or allow Plaintiff the opportunity to limit the tests being administered.  All neuropsychological testing will be recognized and accepted within the field of modern psychiatric practice.

(*Id.* at 3-4.)  As to Plaintiff's claim of unfair advantage, Defendants point to "Plaintiff's own disclosure of multiple treating physicians in his Disclosure of Expert Witness List and Reports, including a neurologist, neuropsychologist, chiropractor, and two (2) orthopedic surgeons, all of whom have had the opportunity to examine the Plaintiff."  (*Id.* at 4.)  Defendants explain that they only seek the same opportunity that Plaintiff's treating physicians and experts have had to ascertain his condition.  (*Id.*)

## II.    Standard

Under Rule 35(a), "on motion for good cause," a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed.R.Civ.P. 35(a).  The order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it."   Fed.R.Civ.P. 35(a)(2)(B).

The two key predicates for ordering a Rule 35(a) examination, namely, the "in controversy" requirement and the "good cause" requirement, "are not

met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 527 (M.D. Fla. 1988) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) and *In re Mitchell*, 563 F.2d 143 (5th Cir. 1977)).  However, "[a] plaintiff in a negligence action who asserts mental or physical injury, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. at 119.

When the "in controversy" requirement is satisfied, the court must determine if the movant has also shown "good cause" for the examination. *See* Fed.R.Civ.P. 35(a)(2)(A); *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 315 F.R.D. 612, 616 (N.D. Fla. 2016) (stating that the two requirements under Rule 35(a), namely, the "in controversy" requirement and the "good cause" requirement, "are distinct and implicate different concerns"). "One factor that is relevant to the determination of 'good cause' is the possibility of obtaining the desired information by other means." *Winstead*, 315 F.R.D. at 616.  "When the 'desired information' is in essence a treating physician/therapist/psychologist's records and opinions about a party's

mental injuries, disclosure of those records and opinions—together with the opportunity to depose the party and perhaps the treater—offers a less intrusive means of obtaining similar (if not the same) information." *Id.* "In contrast, a plaintiff who submits to an evaluation by an expert chosen by her lawyer is not seeking treatment—she's trying to advance her litigation position. Forcing such a plaintiff to submit to a similar examination conducted by a different expert (one likely chosen by the opposing party) is not a punishment, but a leveling of the playing field." *Id.* at 616 n.3. "Even if good cause is shown [under Rule 35(a)(2)(A)], it is still within the court's discretion to determine whether to order an examination." *Id.* at 616-17 (internal quotation omitted).

### III.   Analysis

Here, Plaintiff does not dispute that his physical and/or mental condition is in controversy for the purpose of authorizing a Rule 35(a) examination. (Doc. 33 at 3.) Additionally, he does not dispute that good cause exists for "a single physical or mental examination concerning Plaintiff's brain injury/cognitive impairment caused by the crash." (*Id.*) Plaintiff also does not challenge the qualifications of either examiner. (*See id.*) Plaintiff disputes, however, that good cause exists for both proposed examinations, arguing that the examinations would be needlessly

duplicative, cumulative, and invasive, resulting in unfair tactical advantage to Defendants.

First, contrary to Plaintiff's argument, the plain language of Rule 35 does not entitle Defendants to only one examination.  *See* Fed.R.Civ.P. 35; *Green v. Floyd Cnty., Ky.*, No. 09-20-ART, 2011 WL 13324005, *2 (E.D. Ky. Apr. 18, 2011) ("Rule 35 does not limit the number of examinations to which a party may be subjected."); *Peters v. Nelson*, 153 F.R.D. 635, 637-38 (N.D. Iowa 1994) ("Rule 35 does not limit the number of examinations.  Nor would such a limitation be a judicious one.  Each request for an independent medical examination must turn on its own facts, and the number of examinations to which a party may be subjected depends solely upon the circumstances underlying the request.") (internal citations omitted).  In fact, multiple independent medical examinations have been authorized pursuant to Rule 35 under appropriate circumstances.  *See Gordon v. United States*, No. 20-14118-MARRA/MAYNARD, 2021 WL 879204, *2-3 (S.D. Fla. Mar. 8, 2021) (directing plaintiff to submit to two Rule 35 examinations: one by a neuropsychologist and another by a life care planner/vocational rehabilitation expert); *Dillon v. Auto-Owners Ins. Co.*, No. 14-cv-246-LTB-MJW, 2014 WL 4976315, *3 (D. Colo. Oct. 6, 2014) (finding that defendant demonstrated a strong showing and good cause for three Rule 35 examinations of plaintiff: one by a board-certified neurologist and psychiatrist; a second one by a

neuropsychologist; and a third one by a physiatrist); *Green*, 2011 WL 13324005 at *2 (finding good cause for an additional independent medical examination where the first examination did not address plaintiff's psychiatric/psychological condition); *Peters*, 153 F.R.D. at 639 (finding good cause for two Rule 35 examinations by experts in different specialties: one by a psychiatrist and another by a neuropsychologist).

In *Peters*, the court gave some "[e]xamples of circumstances in which courts have held sufficient cause existed to justify second examinations," including the following:

> (1)  separate injuries calling for examination by distinct medical specialties;
> (2)  where a physician requires assistance of other consultants before he can render a diagnosis;
> (3)  where the first examination was not adequate or complete; and
> (4)  where a substantial time lag occurred between the initial examination and trial.

153 F.R.D. at 638 (also stating that courts were not "willing to order batteries of examinations by different specialists unless each was supported by good cause").

Here, Plaintiff concedes that the two examiners are from different specialties.  As in *Peters*, the two proposed examinations would not be duplicative or cumulative.  *See Peters*, 153 F.R.D. at 639 ("The court concludes that the second examination is not needlessly duplicative;

therefore, good cause has been shown for the second examination.  Dr. Taylor is a psychiatrist, and Dr. Rypma is a neuropsychologist.  The tests they apply and the manner in which they evaluate their results are not identical and are not even likely to be based on the same data, such that one doctor could rely on data gathered by another, and arrive at an expert opinion without a personal examination of the plaintiff.").  As Defendants point out:

> Physiatry and Neuropsychology are two distinct medical fields with differences in training and expertise.  Neuropsychological testing seeks to assess cognitive function, and neuropsychologists administer[] a unique battery of tests to make that assessment. A Physiatrist's testing seeks to determine physical diagnoses of a patient and evaluate injury, and administer their own battery of tests to do so.

(Doc. 36 at 3.)  Defendants add that the *physical* manifestations of brain injury are different from the *neuropsychological* symptoms of cognitive impairment, necessitating separate examinations by a physiatrist and a neuropsychologist.  (*Id.* at 2.)  Additionally, allowing both examinations to proceed is not inconsistent with "keeping the number of examinations to the minimum necessary considering the party's right to privacy and the need for the court to have accurate information."  *Peters*, 153 F.R.D. at 639.  Finally, Defendants persuasively argue that the two examinations would not give them unfair advantage because they merely seek the same opportunity that Plaintiff's treating physicians and experts have had to ascertain Plaintiff's condition.  (Doc. 36 at 4.)  Based on the foregoing, the Court finds there is

good cause for both examinations to proceed.  *See Green*, 2011 WL 13324005 at *2 ("Where alleged injuries 'call for examination by distinct medical specialties . . . or where the first examination was not adequate or complete,' good cause exists to justify a second examination.").

Having concluded that there is good cause for both examinations, Rule 35 requires that the Court's Order specify the time, place, manner, conditions, and scope of the examinations, as well as the persons who will perform them.  Plaintiff argues that the Court should impose a number of conditions on the scope of any examination of Plaintiff's brain, arguing that such examination is inherently invasive and sensitive.  (Doc. 33 at 1-2, 6-8.) Before addressing each of the conditions requested by Plaintiff, the Court notes that "[a] party seeking limitations or the imposition of a protective order on an independent medical examination bears the burden of demonstrating 'good cause' or 'compelling need' for the request."  *Green*, 2011 WL 13324005 at *2.

First, Plaintiff requests that Defendants provide a description of the potential tests that will comprise the universe of tests that the examining physicians intend to conduct and precluding any invasive testing without Plaintiff's informed consent or a Court order.  Defendants respond that the examinations would not be invasive and that all neuropsychological testing would be recognized and accepted within the field of modern psychiatric

14

practice.  Defendants argue that providing the neuropsychological testing tasks or other related information to Plaintiff would result in either familiarity with the testing and exposure to testing items that materially affect the examination results, or would allow Plaintiff an opportunity to limit the tests being administered.

"During Rule 35 examinations, courts often allow 'routine procedures.'" *Laney v. Hosp. Bd. of Dirs. of Lee Cnty.*, No. 2:09-cv-678-FtM-29SPC, 2010 WL 2540598, *4 (M.D. Fla. June 22, 2010); *Calderon v. Reederei Claus-Peter Offen GMBH & Co.*, 258 F.R.D. 523, 529 (S.D. Fla. 2009) (same); *but see Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 398-99 (S.D. Tex. 2013) ("Although some courts find it appropriate to generically order 'routine procedures' be performed, this Court feels it more appropriate to order Defendant to submit to Plaintiff a list of those 'potential tests that will comprise the universe of tests' that the examining physicians intend to conduct.  Defendant shall also indicate to Plaintiff the scope of any interviews that are to be conduct[ed].") (internal citations omitted).  Here, "[t]he Court agrees with a previous order from the Middle District of Florida in which the court was 'hesitant to limit the types of tests which should be administered, as it believes [the examiner] is more informed to make such a judgment.'" *Laney*, 2010 WL 2540598 at *4.  Thus, "the types of tests will be within the discretion of [the examiner]."  *Id.*  As in *Laney*:

> Plaintiff has given this Court no reason to believe that [the examiner] would not perform the examination legally and ethically. Plaintiff may introduce a contrary expert report if they do not agree with the examination and may also depose and cross-examine [the doctor].

*Id.*; *see also Calderon*, 258 F.R.D. at 529 (allowing the examining physician to perform the routine procedures and noting defense counsel's assurance that the examining physician will not perform any invasive testing). In sum, the examining physicians may perform the routine procedures of a neurological/medical examination and a neuropsychological examination, respectively, which are necessary to assess the cause, nature, and extent of Plaintiff's injuries and to provide an expert medical opinion. *Calderon*, 258 F.R.D. at 530.

Plaintiff also argues that the examiners should be limited to eliciting information reasonably necessary to conduct the specialty-appropriate examinations and evaluations of Plaintiff, including a medical history and present complaints. However, as in *Calderon*, "Plaintiff has not carried his burden of demonstrating that the examining physician[s] will improperly conduct the examination[s] as an advocate for Defendant[s], attempt to ask Plaintiff questions not pertinent to the examination[s], or otherwise turn the examination[s] into a *de facto* deposition." *Id.* at 528. As such, the Court will not limit the examining physicians' inquiries.

The next two conditions that Plaintiff requests are as follows: (1) directing Plaintiff to furnish only his name, address, and date of birth upon arrival at the examiner's office and directing that any additional paperwork be delivered to his counsel's office no later than 72 hours prior to the examination; and (2) requiring Plaintiff to bring only a valid form of identification to the examination and requiring defense counsel to provide the examiner with all medical records, imaging studies, test results, etc., which defense counsel wants the examiner to review as part of the examination. Defendants do not seem to object to these proposed conditions, which were adopted by the court in *Conner*, 2021 WL 4804440 at *3. In light of the lack of opposition and nature of Plaintiff's alleged injuries, the Court finds it appropriate to incorporate these limitations in its Order.

Further, Plaintiff asks that the examinations be limited to four hours. Defendants agree that Dr. Herkov's examination shall be limited to four hours, but request that Dr. Cifu's examination be permitted to last as long as is necessary to reasonably assess Plaintiff's physical condition and to provide an expert opinion. As Plaintiff has not provided any specific reason for limiting the duration of Dr. Cifu's examination, the Court finds that the examination shall take as long as is necessary for the examining physician to assess Plaintiff's condition and to provide an expert opinion. *See Green*, 2011 WL 13324005 at *2 (finding plaintiff is not entitled to control the

17

examination by limiting the scope of the testing or the duration of the examination); *Calderon*, 258 F.R.D. at 529-30 (declining plaintiff's invitation to limit the examination to 45 minutes because the court had "no reason to doubt the examining physician [would] conduct the examination in the time reasonably needed to assess Plaintiff's physical condition in order to render an expert medical opinion").

Finally, Plaintiff asks that his counsel be allowed to send a court reporter or a videographer to the examinations after notifying defense counsel of their identity at least five days prior to the examination. "The majority of federal courts have held that attorneys, court reporters, and recording devices are distractions and may 'turn a neutral examination into an adversarial event.'" *Laney*, 2010 WL 2540598 at *3 (citations omitted); *see also Gordon*, 2021 WL 879204 at *2 ("The majority view in federal court is to exclude third parties from Rule 35 examinations absent special circumstances."); *Hacking v. United States*, No. 19-14449-CIV-CANNON/MAYNARD, 2021 WL 1342494, *2 (S.D. Fla. Feb. 16, 2021) ("In federal court, the majority view is to exclude third parties absent special circumstances."); *Jackson v. Allstate Prop. & Cas. Ins. Co.*, No. 2:14-cv-717-FtM-38DNF, 2015 WL 12843190, *1 (M.D. Fla. Mar. 13, 2015) (same). "[T]he burden is on the party seeking to have the exam recorded to demonstrate 'good cause' for the request," pursuant to Rule 26(b) of the Federal Rules of

Civil Procedure. *Gordon*, 2021 WL 879204 at *2; *see also Hacking*, 2021 WL
1342494 at *2 (same); *Laney*, 2010 WL 2540598 at *3 (same).

Here, Plaintiff has not satisfied his burden to have a court reporter or a
videographer present at the examinations.  Notably, Plaintiff did not object to
Defendants' choice of examiners.  Also, consistent with the purpose of Rule 35
"to put both parties on equal footing with respect to the plaintiff's condition,"
Plaintiff should be examined outside the presence of third parties just as he
was examined by his own experts.  *See Hacking*, 2021 WL 1342494 at *3.
"Additionally, it is recognized that psychological examinations necessitate an
unimpeded, one-on-one exchange between the doctor and patient." *Green*,
2011 WL 13324005 at *3 (citations and quotation marks omitted).  The
presence of a recording device, or an observer, "would lend a degree of
artificiality to the examination that would be inconsistent with the applicable
professional standard." *Id.* (citations and quotation marks omitted).
Further, Plaintiff would be "adequately safeguarded by Rule 35's
requirement that an examiner provide a detailed written report of the
examination setting forth the examiner's specific findings and the tests
administered." *Gordon*, 2021 WL 879204 at *2; *Laney*, 2010 WL 2540598 at
*3.  Plaintiff may also depose the examiners and challenge their "findings,
testing, and conclusions." *Gordon*, 2021 WL 879204 at *2; *see also Laney*,
2010 WL 2540598 at *3 (stating that "a plaintiff may raise any objections to

the examiner's findings from the exam through her own expert or lay opinion).

Here, as in *Calderon*, the parties are directed to agree on mutually convenient dates and times for the examinations, after which Defendants shall submit a proposed order setting forth the particulars required by Rule 35, taking into account the findings set forth in this Order, **no later than May 2, 2022**. *See Calderon*, 258 F.R.D. at 526, 530 ("A court may grant a request for examination subject to it issuing a further order specifying the details."); *see also Dillon*, 2014 WL 4976315 at *3 (directing the parties to "meet and confer within five (5) days from the date of this Order and clear dates, times, and locations for Plaintiff to undergo the three [independent medical examinations]"); *Ornelas*, 292 F.R.D. at 398 (stating that "a court may grant a request for examination subject to it issuing a further order specifying the details, or subject to a mandate that the parties confer regarding the specifics").

Accordingly, it is **ORDERED**:

The Motions (**Doc. 24 & 27**) are **GRANTED as stated herein**. Defendants' proposed order is due **on or before May 2, 2022**.

**DONE AND ORDERED** at Jacksonville, Florida, on April 25, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record